UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK Q. TAYLOR                                             CIVIL ACTION

versus                                                     NO. 07-2890

TERRY TERRELL, WARDEN                                      SECTION: "B" (1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Mark Q. Taylor, is a state prisoner incarcerated at the Allen Correctional Center, Kinder, Louisiana. On July 31, 1997, he was convicted of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2] On November 20, 1998, he was found to be a second offender and was resentenced as such to a term of forty-nine and one-half years imprisonment without benefit of probation or suspension of sentence.[3] On August 31, 1999, the Louisiana Fifth Circuit Court of Appeal affirmed his enhanced sentence.[4]

In the interim, on or about April 5, 1999, petitioner had filed with the state district court a motion for a new trial[5] which was denied on October 4, 1999.[6] He next filed with the Louisiana Fifth Circuit Court of Appeal a related writ application which was denied on November

---

[2] State Rec., Vol. VI of VII, transcript of July 31, 1997, p. 161; State Rec., Vol. I of VII, minute entry dated July 31, 1997; State Rec., Vol. V of VII, jury verdict form.

[3] State Rec., Vol. VI of VII, transcript of November 20, 1998, p. 19.

[4] State v. Taylor, 743 So.2d 749 (La. App. 5th Cir. 1999) (No. 99-KA-385); State Rec., Vol. II of VII. Petitioner did not challenge his underlying conviction in that direct appeal.

[5] In connection with that filing, petitioner also filed a writ application with the Louisiana Supreme Court asking that his case be remanded to the trial court for consideration of his motion. State Rec., Vol. VII of VII. The Louisiana Supreme Court granted that application "for the sole purpose of transferring the file to the district court for its consideration." State v. Taylor, 745 So.2d 611 (La. 1999) (No. 99-KH-1548); State Rec., Vol. II of VII. Petitioner apparently also filed a similar application with the Louisiana Fifth Circuit Court of Appeal which was denied. State v. Taylor, No. 99-KH-43 (La. App. 5th Cir. Feb. 26, 1999) (unpublished); State Rec., Vol. VII of VII. With respect to that ruling, petitioner filed yet another application with the Louisiana Supreme Court which was denied. State v. Taylor, 752 So.2d 168 (La. 1999) (No. 99-KH-3272); State Rec., Vol. IV of VII.

[6] State Rec., Vol. II of VII, Judgment dated October 4, 1999.

17, 1999.[7] The Louisiana Supreme Court then denied a related writ application on June 30, 2000,[8] as well as an application for reconsideration on August 23, 2000.[9]

In the meantime, petitioner had already returned to the state district court once again to file a motion to amend, correct and reconsider sentence on or about August 14, 2000, as well as an amended motion to correct illegal sentence on or about August 17, 2000. Both of those motions were denied on September 25, 2000.[10] On October 31, 2000, the Louisiana Fifth Circuit Court of Appeal denied petitioner's related writ application.[11]

On or about January 19, 2001, petitioner filed with the state district court a motion to vacate judgment and a motion for recusal. Those motions were denied on February 6, 2001.[12] On or about January 24, 2001, he also filed with the state district court a motion for a new trial and an amended motion for a new trial. Those motions were likewise denied on February 14, 2001.[13]

---

[7] State v. Taylor, No. 99-KH-1213 (La. App. 5th Cir. Nov. 17, 1999) (unpublished); State Rec., Vol. II of VII.

[8] State ex rel. Taylor v. State, 765 So.2d 1063 (La. 2000) (No. 2000-KH-0035); State Rec., Vol. VII of VII.

[9] State ex rel. Taylor v. State, No. 2000-KH-0035 (La. Aug. 23, 2000) (unpublished); State Rec., Vol. VII of VII.

[10] State Rec., Vol. IV of VII, Order dated September 25, 2000.

[11] State v. Taylor, No. 00-KH-1714 (La. App. 5th Cir. Oct. 31, 2000) (unpublished); State Rec., Vol. IV of VII.

[12] State Rec., Vol. III of VII, Order dated February 6, 2001.

[13] State Rec., Vol. III of VII, Order dated February 14, 2001.

He then challenged those rulings by filing with the Louisiana Fifth Circuit Court of Appeal a related writ application which was denied on March 16, 2001.[14]

Petitioner next filed with the state district court an application for post-conviction relief on or about May 18, 2001, which was denied on June 15, 2001,[15] and a motion to amend and supplement his application for post-conviction relief on or about June 15, 2001, which was denied on June 27, 2001.[16] He then challenged those rulings by filing with the Louisiana Fifth Circuit Court of Appeal a related writ application which was denied on July 31, 2001.[17]

Also during 2001, petitioner filed two additional writ applications with the Louisiana Supreme Court; however, copies of those writ applications are not in the record and it is unclear which, if any, rulings of the lower courts they challenged. Nevertheless, in any event, the Louisiana Supreme Court denied the writ applications on December 7, 2001.[18]

---

[14] State v. Taylor, No. 01-KH-263 (La. App. 5th Cir. Mar. 16, 2001) (unpublished); State Rec., Vol. IV of VII.

[15] State Rec., Vol. III of VII, Order dated June 15, 2001.

[16] State Rec., Vol. III of VII, Order dated June 27, 2001.

[17] State v. Taylor, No. 01-KH-853 (La. App. 5th Cir. July 31, 2001) (unpublished); State Rec., Vol. IV of VII.

[18] State ex rel. Taylor v. State, 803 So.2d 26 (La. 2001) (No. 2001-KH-0908); State ex rel. Taylor v. State, 803 So.2d 975 (La. 2001) (No. 2001-KH-3001); State Rec., Vol. IV of VII. In his federal application, petitioner seems to suggest that case number 2001-KH-3001 concerned his direct appeal. However, this Court rejects that contention because: (1) there is no basis in the record to support it, (2) the Louisiana Supreme Court's ruling in that case did not reference the direct appeal ruling or docket number, and (3) the direct appeal ruling was issued in 1999 and, as is evident by the Supreme Court docket number, case number 2001-KH-3001 was not filed until 2001. Nevertheless, even if that writ application related to the direct appeal ruling, it would change nothing in this case. Petitioner's federal application would still be untimely and his underlying claim would still have no merit.

On or about April 25, 2002, petitioner filed with the state district court motions for new trial, an out of time appeal, writ of habeas corpus and evidentiary hearing which were denied on May 24, 2002.[19]

Petitioner's next state court filing was a motion to correct illegal sentence filed with the state district court on or about September 16, 2003, and denied on September 19, 2003.[20] His related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on November 5, 2003,[21] and by the Louisiana Supreme Court on November 24, 2004.[22]

On or about June 14, 2006, petitioner sent a letter to the state district court judge. That letter was construed as a motion to amend, modify or reconsider sentence and was denied on June 20, 2006.[23]

On May 10, 2007, petitioner then filed the instant federal application for *habeas corpus* relief. In support of his application, petitioner claims that his enhanced sentence is illegal.

The state argues that petitioner's federal application is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his criminal judgment becomes "final."

---

[19] State Rec., Vol. IV of VII, Order dated May 24, 2002.

[20] State Rec., Vol. IV of VII, Order dated September 19, 2003.

[21] State v. Taylor, No. 03-KH-1280 (La. App. 5th Cir. Nov. 5, 2003) (unpublished); State Rec., Vol. IV of VII.

[22] State *ex rel.* Taylor v. State, 888 So.2d 225 (La. 2004) (No. 2003-KH-3376); State Rec., Vol. IV of VII.

[23] State Rec., Vol. IV of VII, Order dated June 20, 2006.

Under the AEDPA, a judgment is considered "final" upon "the conclusion of direct review or the expiration of time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[24] Further, the AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2).

As noted, on August 31, 1999, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's enhanced sentence. Therefore, at the latest, the underlying state criminal judgment in this case became final on September 30, 1999, when petitioner's period expired for filing a writ application with the Louisiana Supreme Court to challenge the judgment of the Court of Appeal.[25]

However, due to petitioner's incessant and overlapping state post-conviction filings, it would be a Herculean task, one that not even the state attempts to undertake in this case, to determine what periods were tolled thereafter and the precise point at which the federal statute of limitations expired. Further, it is impossible to accomplish that task here because the exact dates on which the numerous post-conviction filings were "filed" under the state "mailbox rule" cannot be determined from the state court record.[26] Fortunately, as the state points out, the Court need not

---

[24] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable here.

[25] The rules of the Louisiana Supreme Court provide in pertinent part: "An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal." Louisiana Supreme Court Rule X, § 5(a). The Court of Appeal mailed notice of its judgment on August 31, 1999. State Rec., Vol. VI of VII, certificate of mailing.

[26] The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a state court filing, and,

undertake that task in this case, because it is clear from the state court record that more than one year elapsed during which petitioner had no applications whatsoever pending before any state court.

On May 24, 2002, the state district court denied petitioner's motion for new trial, motion for an out of time appeal, writ of habeas corpus and evidentiary hearing.  Even *if* the entire period from the date the criminal judgment became final had been tolled up to that point by petitioner's various post-conviction filings, all federal tolling credit nevertheless clearly ceased no later than June 24, 2002, when petitioner's period expired for seeking review of the May 24 denial.[27] At that point at the latest, petitioner no longer had *any* state court filings pending before *any* state court regarding this conviction or sentence, and he allowed well over a year to elapse untolled before he filed his motion to correct illegal sentence in September of 2003.[28]  Therefore, that period alone, for which no statutory tolling credit is available and during which more than one year elapsed untolled, necessarily exhausted the limitations period and renders his federal application untimely.

The Court notes that the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, be equitably tolled.

---

therefore, such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  There is no evidence in the state court record as to when petitioner placed his various motions and applications in the prison mail system.

[27]  Under state law, petitioner had thirty days to seek such review.  See Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Louisiana Uniform Rules of the Courts of Appeal Rule 4-3. Because the thirtieth day, June 23, 2002, was a Sunday, the deadline was extended until the following day.  See La.C.Cr.P. art. 13(2); La.Rev.Stat.Ann. § 1:55(A).

[28]  Petitioner signed that motion on September 10, 2003.  State Rec., Vol. IV of VII.  Therefore, it could not have been given to prison authorities for mailing and considered "filed" under the state "mailbox rule" prior to that date.

See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).  However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted).   Petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).  Petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations regarding his federal application for *habeas corpus* relief.

In light of the fact that petitioner allowed more than one year to elapse without any state court filing which would entitle him to statutory tolling, as well as the fact that he has failed to establish any basis for equitable tolling of any period of time, it is evident that his federal application is untimely and should be dismissed on that basis.

However, out of an abundance of caution, the Court further notes that, in any event, petitioner is not entitled to federal *habeas corpus* relief even if his underlying claim is considered.  In an unrelated case, petitioner had pled guilty on April 15, 1996, to illegal discharge of a firearm in violation of La.Rev.Stat.Ann. 14:94.  It was that conviction which was then used to enhance petitioner's current sentence.  In the instant federal application, petitioner argues that the sentence imposed with respect to his predicate 1996 conviction was illegal.  He opines that the predicate conviction was therefore invalid and, accordingly, could not legally be used to enhance his current sentence.  That claim is barred by Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001), in which the United States Supreme Court stated:

- 8 -

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.

Id. at 403. Therefore, petitioner may not challenge his enhanced sentence in a § 2254 application on the ground that the predicate conviction was illegal. Id. at 403-04.[29]

---

[29] The Supreme Court noted that the Lackawanna prohibition would not apply when it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel as required by Gideon v. Wainwright, 372 U.S. 335 (1963). Lackawanna, 532 U.S. at 404. That limited exception is inapplicable in this case.

The Supreme Court further noted that the Lackawanna prohibition may not apply if the federal *habeas corpus* petition is, effectively, the first and only forum available for review of the challenge to the prior conviction. Id. at 405; see also Flot v. Cain, Civ. Action No. 05-6439, 2007 WL 2491388, at *9 n.33 (E.D. La. Aug. 30, 2007). That potential exception is also inapplicable here, in that petitioner's claim regarding his predicate conviction has previously been considered by the state courts. Petitioner attached to the instant federal application documents showing that, in the state post-conviction proceedings relating to the predicate conviction, his claim was reviewed and rejected by the state courts. In that proceeding, the state district court held:

> [D]efendant maintains that the sentence imposed is illegal because the imposition of probation for the crime of illegal use of a weapon is contrary and opposition to the provisions set for in LA C.Cr.P. art. 893. The defendant maintains that the trial court had no authority nor directed by lay to impose probation for a crime of violence.
> Upon review, the defendant pled guilty to one count of illegal use of a weapon on April 15, 1996. The defendant was sentenced to imprisonment at hard labor for a term of eighteen (18) months. The sentence was suspended and the defendant was placed on active probation for a term of eighteen (18) months. His probation was later revoked. The sentence imposed is not contrary to the sentencing guidelines set forth in LA R.S. 14:94 (B). The defendant's interpretation of "crime of violence" and LA R.S. 14:94 is misplaced. Thus, his claim is without merit.

Rec. Doc. 3, p. 38, Order dated October 14, 2005. The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling. State v. Taylor, No. 05-KH-961 (La. App. 5th Cir. Dec. 2, 2005) (see Rec. Doc. 3, p. 59). The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons. State *ex rel.* Taylor v. State, 937 So.2d 379 (La. 2006) (see Rec. Doc. 3, p. 78).

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Mark Q. Taylor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of October, 2007.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**